IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DANNY E. DELONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 114-089 |
| ) | |
| T.J. CONELY, Deputy Warden, ASMP, ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate incarcerated at Georgia Diagnostic and Classification Prison in Jackson, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events alleged to have occurred at Augusta State Medical Prison in Augusta, Georgia. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.  SCREENING OF THE COMPLAINT**

**A.  BACKGROUND**

In the complaint, Plaintiff names Deputy Warden T.J. Conley ("Conley") of Augusta State Medical Prison as the lone Defendant. (See doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff claims that on August 28, 2012, Conley placed him in administrative segregation "for know [sic] reason at all." (Id. at 5.) No hearing was held and Plaintiff was

not given any paper work regarding the decision. (Id.) On November 26, 2012, Plaintiff was transferred from Augusta State Medical Prison to his current facility, where he was placed in a special management unit ("SMU"). (Id.) Plaintiff states that his new facility is not equipped to house him due to his mental health classification. (Id.)

Following his transfer, Plaintiff learned that his chart contained an indication of his involvement in gang activity, providing a possible explanation for his placement in administrative segregation and subsequent transfer. (Id.) However, Plaintiff states "this is just retaliation I believe cause [sic] Warden T.J. Conely are [sic] friends with Warden Powell here at SMU." (Id.) Plaintiff has attempted to obtain records regarding his transfer and the gang activity designation, but has not been successful. (Id.) He filed two grievances, one regarding his placement in administrative segregation without a hearing and the other his transfer and placement in an SMU. Plaintiff attached to the complaint copies of these grievances, the initial responses thereto, and the appeal responses. (Id. at 7-12.) Plaintiff asks the Court "to help [him] bring this issue to Court cause [sic] [his] due process has been violated," and requests assistance in obtaining information "to prove [his] case." (Id. at 6.)

### B. DISCUSSION

#### 1. Legal Standard for Screening.

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, of if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."

Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Lack of Exhaustion.

Plaintiff's complaint should be dismissed because of his failure to exhaust administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act

("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir.

2000) (*per curiam*).[1]  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Because of the date of the alleged incidents, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on June 1, 2004.[2]  Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. SOP IIB05-0001 § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. §§ VI(C)(2) & (D)(2). The SOP requires that an inmate be given a response to his informal grievance within ten calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. §§ VI(B)(12)-(13).

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

[2] The current version of the SOP became effective on December 10, 2012. See SOP IIB05-0001 (2012).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has 30 calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has 90 calendar days after receipt of the grievance appeal to respond. Id. §§ VI(D)(2) & (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

Here, Plaintiff filed grievances challenging his transfer and claiming violation of his due process rights based on his placement in administrative segregation without a hearing. (Doc. no. 1, pp. 8, 11.) However, the appeal responses attached to the complaint both state that he "failed to follow the proper procedure" in filing his grievances. (Id. at 7, 10.) Specifically, Plaintiff untimely filed his challenge to his placement in administrative segregation, and he could not challenge his transfer by means of the grievance system. (Id.; see also SOP IIB05-0001 § IV(B)(2)(f).) As such, Plaintiff did not exhaust his administrative remedies because he did not comply with the administrative deadlines and procedural rules. See Woodford, 548 U.S. at 90.

### 3. Even if Plaintiff Had Exhausted Administrative Remedies, He Fails to State a Claim Based on His Placement in Administrative Segregation Without a Hearing.

Even if he had properly exhausted his administrative remedies, Plaintiff's due process claim based on his placement in administrative segregation without a hearing fails to state a claim upon which relief can be granted. For Plaintiff's right to due process to

6

have been violated, he must have been deprived of life, liberty, or property; absent such deprivation, Plaintiff may not prevail on a due process claim irrespective of alleged procedural deficiencies regarding determinations by prison officials that affect the conditions of his confinement. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

In determining whether a protected interest is implicated and the Due Process Clause attaches in the prison context, the expectations created by state regulations are not conclusive, the nature of the sanctions imposed are. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Sanctions imposed by prison officials on inmates do not implicate due process concerns unless (1) "a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court," or (2) "the state has consistently given a certain benefit to prisoners . . . and the deprivation of that benefit 'imposes [an] atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Id. at 484; see also Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

Here, Plaintiff's placement in administrative segregation does not amount to an infringement of a protected life, liberty, or property interest, because being placed in administrative segregation while awaiting transfer does not establish the imposition of an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 486 (placement in segregated confinement for thirty days does not infringe on protected liberty interest); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (*per curiam*) (placement in administrative confinement for two months does not infringe on protected liberty interest); see also Al-Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006) (*per curiam*) (plaintiff's confinement in segregation for thirty months did not constitute a due process violation because it occurred "under conditions

substantially similar to those experienced by the general population of [the prison]"). Therefore, irrespective of any procedural inadequacies, Plaintiff fails to state a viable due process claim.

### 4. Even if Plaintiff Had Exhausted Administrative Remedies, He Fails to State a Claim Based on His Transfer.

Similarly, even if Plaintiff had exhausted his administrative remedies regarding his transfer, his challenge to the transfer fails to state a claim on which relief can be granted. Prisoners do not possess a constitutional right to be placed, or not to be placed, in a particular prison facility with particular amenities. McKune v. Lile, 536 U.S. 24, 39 (2002); Meachum v. Fano, 427 U.S. 215, 225 (1976).

To the extent Plaintiff attempts to couch his challenge as a retaliation claim, it still fails. "To prevail on a retaliation claim, the inmate must establish that: '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech . . . .'" O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). Here, Plaintiff does not mention any protected speech of his that resulted in his gang activity classification and subsequent transfer, but merely postulates they were retaliatory because Conley and the Warden of his new facility are friends. (Doc. no. 1, p. 5.) However, this assertion does not raise Plaintiff's conclusory allegation above the speculative level, and thus a retaliation claim would fail even if he had exhausted his administrative remedies. See Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (*per curiam*) (citing Twombly, 550 U.S. at 555).

### III.  CONCLUSION

In sum, Plaintiff has failed to properly exhaust his administrative remedies and, even if he had exhausted, he has failed to state any claim for relief.  Thus, for the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** and this civil action **CLOSED**.

SO REPORTED and RECOMMENDED this 5th day of June, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA